☑ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 24-879M(NJ) |
| Records and information associated with the cellular device assigned call | ) |
| number 414-627-5500 ("Target Cell Phone"), that is in the custody or control | ) |
| of U.S. Cellular ("Service Provider"), a wireless telephone service provider | ) |
| headquartered at 8410 W. Bryn Mawr Avenue, Suite 800, Chicago, IL 60631 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 7/9/2024_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 6/25/2024 @ 11:59 a.m.

*Judge's signature*

City and state:     Milwaukee, WI          Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

1.  Records and information associated with the cellular device assigned call number **414-627-5500** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of US Cellular (referred to herein and in Attachment B as the "Service Provider"), a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Ave., Suite 800, Chicago, IL 60631.

2.  The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from March 1st , 2024, to present:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 18

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for voice, text and data including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as specialized location data including timing advance, LocDBoR, RTT or similar.

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as specialized location data including timing advance, LocDBoR, RTT or similar.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

Page 20

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Joshua PATTON, and other identified and unidentified subjects during the period of March 1st, 2024, to 30 days from the date this warrant is signed.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with the cellular device assigned call<br>number 414-627-5500 ("Target Cell Phone"), that is in the custody or control of<br>U.S. Cellular ("Service Provider"), a wireless telephone service provider<br>headquartered at 8410 W. Bryn Mawr Avenue, Suite 800, Chicago, IL 60631. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 24-879M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized):*

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | possession with intent to distribute, and conspiracy to possess with the intent to distribute controlled substances |

The application is based on these facts:

Please see attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Moss, Task Force Officer (TFO) - DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 6/25/2024

_____
*Judge's signature*

City and state: __Milwaukee, WI__

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

I, Christopher Moss, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **414-627-5500** (the "Target Cell Phone"), whose service provider is US Cellular ("Service Provider") a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Ave., Suite 800, Chicago, IL 60631. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.        I have been a certified and sworn law enforcement officer since September 15, 2008 I am employed as a narcotics investigator with the City of Waukesha Police Department Narcotics and Vice Unit while currently assigned as a Task Force Officer with the Waukesha County Drug Task Force / DEA Group # 69 from January 2022-Present.  I have been a part of dozens of state and federal investigations related to drug activity.   I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal offenses. I have received extensive training on death investigations, narcotics investigations, and cell phone analytics.

5.        I have conducted investigations of death, drug, and property crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience.  Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

Page 2

6.    I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

7.    I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8.    I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms

Page 3

possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

9.      This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and confidential sources (CSs), whose reliability is established separately herein.

10.     The investigation to date has included traditional law enforcement methods, including, but not limited to: CSs, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846 (possession

with intent to distribute, and conspiracy to possess with the intent to distribute controlled substances), have been committed by Joshua D. PATTON (M/B, DOB: 08/20/1995) and suspected other unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. PROBABLE CAUSE

### A. BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

12.     Beginning in March 2024, Drug Enforcement Agency (DEA) and the Waukesha County Drug Task Force, hereinafter referred to as "case agents," began investigating an armed drug trafficking person operating in the Eastern District of Wisconsin (WI) which involves Joshua D. PATTON. and suspected other unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned PATTON sells fentanyl, purported to be heroin, and is armed with firearms during controlled transactions. Case agents also determined that PATTON is suspected of utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute narcotics throughout the Eastern District of Wisconsin.

13.     In March 2024, Confidential Source (CS) 1 contacted investigators and stated that he/she has knowledge that a target with the street name "MITCH" was selling mid-quantities of heroin, which "MITCH" told CS 1 is actually "feti". Based on my training, experience, and investigation into "MITCH", I understand "feti" to mean fentanyl, which was also verified by CS 1.

14.     The CS 1 indicated that he/she has known "MITCH" for several years, as "MITCH" has supplied CS 1 with large quantities of heroin in the past during paid drug transactions. The CS 1 indicated that "MITCH" had been arrested previously for suspected weapon and drug charges

Page 5

in Milwaukee County in 2022.

15.     CS 1 indicated that he/she had contacted "MITCH" via known telephone number 414-627-5500.  TFO Moss queried 414-627-5500 using a reliable law enforcement database, which identified the mobile provider as US Cellular.

16.     CS 1 information is credible and reliable, where CS 1 has given information concerning an individual involved in illegal activities which has been independently verified through this investigation.  The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS 1 is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County. CS 1 has prior convictions for felony drug offenses and other felony Operating While Intoxicated offenses.

17.     TFO Moss knows a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an CS purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and prerecorded buy money. When a CS is used, he/she is searched for contraband, weapons, and money before the operation. The CS is also equipped with a concealed body recorder and monitoring device. When the transaction is completed, the CS meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The CS is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the CS while under the direction and control of case agents are recorded.

**B.     CONTROLLED BUYS WITH "MITCH" AND IDENTIFICATION THEREOF**

18.     The Waukesha County Drug Task Force, DEA Group #69, is conducting an investigation into a target known as "MITCH". "MITCH" is believed to be a trafficker of Cocaine

and Heroin in the Metro Milwaukee area. "MITCH" is known to utilize multiple cell phone numbers, including 414-627-5500 ("Target Cell Phone"), which is the number provided by a Confidential Source (CS) working with the Waukesha County Drug Task Force.

19.     Since March 2024, CS 1 engaged in two controlled buys with "MITCH" in the Milwaukee Metro area, yielding approximately 15.1 grams of heroin, where the substances field tested positive for fentanyl.  Generally, during the controlled buys of controlled substances and/or firearms the CS 1 placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement.  Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions.

20.     During the controlled buys with CS 1, investigators consistently observed a white Jeep Grand Cherokee SUV bearing Wisconsin Registration AXB-6450 {Registered Owner: Terri S. WALKER; DOB: 02/05/1990; DL: W426817905503; 4988 N. 60th Street, Milwaukee, Wisconsin 53218; on a white Jeep Grand Cherokee SUV; VIN: 1C4RJEBG0FC903686} arrive in the area of the controlled buy with CS 1 and conduct the narcotics transaction with CS 1 utilizing pre-recorded buy money.

21.     In late March 2024, following the completion of a controlled buy with "MITCH", TFO Moss conducted further follow-up into the identification of "MITCH" and positively identified "MITCH" as Joshua D. PATTON (M/B DOB 08/20/1995) based on observed distinct hand tattoos in covert surveillance video and digital display on the dashboard of the Jeep Grand

Cherokee that showed an Apple iPhone was synced and labeled as "Joshua's iPhone". The distinct hand tattoos were cross-referenced with the Wisconsin Department of Corrections and matched those documented during the booking process of PATTON in the past. TFO Moss contacted the CS 1 and confirmed that the dealer "MITCH" from a previous controlled transaction was the same subject, therefore confirming the identity of "MITCH" as PATTON, who is the target of this investigation.

22.     In early April 2024, TFO Moss conducted follow-up regarding the identification of "MITCH" as PATTON. TFO Moss utilized the Wisconsin Circuit Court website, which is believed to be truthful and accurate, and observed that PATTON had a pending Milwaukee County Circuit Court Case (2022CF001175) with a pending charges for 2nd Degree Recklessly Endangering Safety, Possess w/Intent-Cocaine (>5-15g), Possess w/Intent-Methamphetamine with Use of Dangers Weapon modifier and Possess Firearm-Convicted of Felony with Use of a Dangerous Weapon modifier filed on March 28th 2022.

23.     TFO Moss located PATTON's Wisconsin Department of Corrections booking photograph and provided it to the CS to review without any identifying information attached. The CS confirmed from the booking photograph of PATTON, where "MITCH" was, in fact, PATTON from the two (2) controlled transactions for fentanyl.

24.     Subsequent surveillance of the address associated with white Jeep Grand Cherokee SUV at the listed address of 4988 N. 60th Street in the City of Milwaukee determined PATTON as the operator of said SUV and observations of PATTON entering this particular address on multiple days via the back service door after parking the SUV in the detached garage.

25.     In mid-April 2024, TFO Moss conducted a third controlled transaction with CS 1 in the City of Milwaukee. Pre-surveillance was conducted at the 4988 N. 60th Street address by

Page 8

investigators, where PATTON was observed arriving at the residence in a Chrysler 200 sedan as the rear-seat passenger. PATTON was observed entering the rear entry door to the residence and then returning to the Chrysler 200 sedan a few minutes later, where he re-entered the rear passenger seat. PATTON was observed wearing a gray hooded sweatshirt with a red design on the front. A short time later, the Chrysler 200 arrived at the predetermined deal location, where PATTON donned a full-faced balaclava and entered CS 1's vehicle to conduct the transaction for 16 grams of a gray substance that later tested positive for fentanyl. A later review of the covert video showed the distinctive hand tattoos of PATTON clearly visible.

26.     In early May 2024, TFO Moss conducted a fourth controlled transaction with CS 1 in the City of Milwaukee, where PATTON arrived solo in the Chrysler 200 and conducted the transaction with CS 1, yielding 25.0 grams of a gray substance, where the substance field tested positive for Fentanyl. A later review of covert video showed PATTON was easily observable as no mask had been donned and PATTON's distinctive hand tattoos were clearly visible.

27.     In late May 2024, TFO Moss conducted a fifth controlled transaction with CS 1 in the City of Milwaukee, where PATTON arrived with an unidentified female front-seat passenger in a newer black Toyota Camry bearing Wisconsin Fleet registration plate of 15961AFT {Registered Owner: EAN Holdings LLC; 14002 E 21st St #1500, Tulsa, Oklahoma 74134; on a black 2023 Toyota Camry sedan; VIN: 4T1K61AK1PU813245}. CS 1 entered the rear passenger seat and conducted transaction with PATTON, yielding 24.5 grams of a white powdery substance, where the substance field tested positive for Fentanyl. Investigators subsequently followed the Toyota Camry to Enterprise Rent-A-Car in the City of Greenfield, where PATTON was observed outside of the vehicle and easily identifiable. Information was later obtained from Enterprise Rent-A-Car that the Toyota Camry was rented in the name of Irene MCGOWAN-TAYLOR. PATTON

Page 9

was observed re-entering the driver's seat of the Toyota Camry and leaving the area of the business.

28.     Since late May 2024, CS 1 advised TFO Moss that PATTON has been in continuous contact with CS 1 with the intention of setting up further controlled transactions for narcotics.  The most recent contacts from PATTON, who was still utilizing the 414-627-5500 cellphone number, occurred in late June 2024, where PATTON advised CS 1 he had an ounce of suspected narcotics set aside specifically for CS 1 due to the past two (2) controlled transactions of similar quantities of suspected Fentanyl.

## III.    JURISDICTION

29.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## IV.    TECHNICAL BACKGROUND

30.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that PATTON is engaged in the trafficking and distribution of controlled substances and is using the **Target Cell Phone** while engaged in these crimes.  I further submit that probable cause exists to believe that obtaining the location information of the **Target Cell Phone** will continue to assist case agents in determining PATTON's criminal activities, to include meeting locations, co-conspirators, and sources of

Page 10

supply.

31.    In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

32.    Based on my training and experience, I know that some service providers can collect timing advance or engineering data commonly referred to as per call measurement data (PCMD), RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), or equivalent. Per-call measurement data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

**A. Cell-Site Data**

33.    In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate

information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

34.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

35.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built

Page 12

into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

36.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

37.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

38.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

39.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data

Page 13

about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

40.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

41.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent

Page 14

or received by a particular device and other transactional records, in their normal course of business.

42. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Joshua PATTON and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Joshua PATTON and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

**V. AUTHORIZATION REQUEST**

43. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

44. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

45. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the

Page 15

Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

46.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1.     Records and information associated with the cellular device assigned call number **414-627-5500** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of US Cellular (referred to herein and in Attachment B as the "Service Provider"), a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Ave., Suite 800, Chicago, IL 60631.

2.     The Target Cell Phone.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from March 1st , 2024, to present:

    i.   Names (including subscriber names, usernames, and screen names);

    ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.   Local and long-distance telephone connection records;

    iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.   Length of service (including start date) and types of service utilized;

    vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Page 18

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for voice, text and data including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as specialized location data including timing advance, LocDBoR, RTT or similar.

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as specialized location data including timing advance, LocDBoR, RTT or similar.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c.  Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

Page 20

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Joshua PATTON, and other identified and unidentified subjects during the period of March 1st, 2024, to 30 days from the date this warrant is signed.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.